HIGHLAND ST. RY. CO. (RAILWAY REGISTER MANUF'G CO. v.). See Case No. 11,535.

HIGHLEYMAN, The (UNITED STATES v.). See Case No. 15,361.

---

## Case No. 6,478.

### Ex parte HIGHT.

[See 2 Car. Law Repos. 47.]

---

## Case No. 6,478a.

HIGHT et al. v. CONTINENTAL LIFE INS. CO.

[10 Ins. Law J. 223.]

Circuit Court, D. Indiana. 1881.

LIFE INSURANCE—PREMIUM—TENDER—PAID-UP POLICY.

Where, by the terms of the contract, a premium on a life policy is payable half in cash and half in note, a notification by the company, through its agent, that it would not accept a note, as it had done before, but that the full premium must be paid in cash, is a violation of the contract, which excuses from a formal tender of the premium thereafter, unless the insured had reason to believe, from its conduct, that the company would accept a tender in accordance with the terms of the contract. If, under such circumstances, the assured afterwards offered to accept a paid-up policy, and the company never accepted the offer, it is liable on the original policy.

[This was an action on an insurance policy by Hight and Handy, administrators, etc., for the estate of J. S. Smith Hunter, against the Continental Life Insurance Company.]

Finch & Finch, Hill, and Butler, for plaintiffs.

Buchanan & Manlove, for defendant.

GRESHAM, District Judge (charging jury). The contract sued on was entered into on the 2d day of December, A. D. 1870. The defendant insured the life of J. S. Smith Hunter for $10,000 in consideration of twenty annual premiums for $472.20 each. The first premium was paid at the time the contract was

entered into, and the remaining nineteen were to be paid annually thereafter on the 2d of December. By the terms of the contract, the assured had the right to pay the premiums, half in cash and half by note. The interest on these notes was to be paid annually in advance. It is admitted that the first premium was paid at the time the contract was entered into, and it is also admitted that the three successive premiums were paid as the policy required viz. $236.10 in cash, and a note for the same amount, and that the interest was paid upon all of these outstanding notes by the assured. On the 2d day of December, 1874, the fifth annual premium became due, and it is insisted by the defendant there can be no recourse on account of the non-payment of this premium. As stated, prior to this time, the annual premium had been paid, half in cash and half by the note of the assured. This was according to the terms of the contract. The assured, by the contract, had the right to pay the premiums half in cash and half in notes, and if at this time he was ready and willing to pay his premiums according to the terms of the policy, and the defendant, by its agent, informed him that he must pay the entire premium in cash, and that it would not accept his note, as it had done theretofore, and as it was bound to do by the terms of the contract for a part of the premium, the company then violates its contract, and this violation excused the assured from making any formal tender of the amount due from him in money and by his note. To keep his policy alive, the assured was bound to pay the defendant on the 2d day of December, 1874, the annual premium of $472.20, together with interest for one year, on his four outstanding notes for $236.10 each, and interest for one year in advance on that day on the note to be executed for half of the fifth annual premium. In other words, if the assured at this time desired to execute his note for half the annual premium, as he had a right to do, he was bound at that time to pay the company $236.10, half of the annual premium, and interest in advance for one year on that sum for the other half, and interest for one year on each of the other outstanding premium notes, less the dividend of $104.21 in the defendant's hands, due the assured. In this view, the amount due from the assured to the defendant in cash, when the fifth annual premium became due, less the dividend due the assured, was $202.74. And before the company could forfeit the policy for non-payment, it was bound to credit the amount due in cash from the assured with the dividend in his hands, due to the assured. Both the parties were bound by the contract just as they had executed it. The company could not, without the consent of the assured, change the terms of the contract; and, as already stated, the assured was excused from making any tender at all, if, in advance, the company had informed him that it would accept payment of the entire premium in cash only. If, however, you find that the company did not insist that the entire premium should be paid in cash, that it insisted on nothing outside of the terms of the contract, then the question arises: Did the assured, on the 2d day of December, 1874, pay his premium as required by the terms of the policy,—that is to say, did he make a legal tender? If you find that the company made no illegal demands upon the assured in advance, as already spoken of, then I have instructed you as to the amount that was due from the assured to the company in cash to avoid forfeiture. If the company insisted on the payment of the entire premium in cash on the 2d day of December, 1874, the assured was excused from making tender thereafter, unless he had reason to believe, from something in the conduct of the company, that it was willing that the premium should be paid according to the terms of the policy.

There is evidence before you tending to show that the assured was willing to accept from the company a paid-up policy for as many twentieths of the total amount as he had paid annual premiums. If, after the defendant had violated its contract, and insisted that the assured should pay his premium in cash only, the assured was willing and offered to take a paid-up policy under the terms of the agreement, and the company never accepted this offer, and no agreement to that effect was ever executed between the assured and the company, then there is nothing in the conduct of the assured which should prevent him from recovering less than the full amount of the policy, subject to proper deductions which will be hereafter referred to.

The plaintiffs have abandoned and dismissed the second paragraph of their complaint.

If you find for the defendant, the form of your verdict will be: "We, the jury, find for the defendant." If you find for the plaintiffs, the form of your verdict will be: "We, the jury, find for the plaintiffs, and assess their damages at $———." If your finding is for the plaintiffs, you will deduct from the amount of the policy the outstanding premium notes and interest accrued thereon, and also the full premiums for 1874 and 1875, with interest thereon, and the amount due the plaintiffs, less these deductions, will draw interest after the expiration of ninety days from the time the company received proofs of death, which, it is admitted, was on the 25th of October, 1876.

The jury returned a verdict for plaintiffs for $9,587.04.

HIGHT (TRAVERS v.). See Case No. 14,-151.

HIGHTOWER (BARNERT v.). See Case No. 1,009.